UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GEORGE FRANZ, III, | ) Case No. 1:08 CV 1983 |
| | ) |
| Plaintiff, | ) Judge Dan Aaron Polster |
| | ) |
| vs. | ) **MEMORANDUM OF OPINION** |
| | ) **AND ORDER** |
| ALLEGHENY INVESTMENTS, LTD., | ) |
| | ) |
| Defendant. | ) |

Before the Court is the Motion to Stay Pending Arbitration filed by Defendant Allegheny Investments, Ltd. ("Allegheny"), a financial services firmed based in Pittsburgh, Pennsylvania ("Motion") (**ECF No. 10**). Allegheny asks the Court, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* and Rule 13200 of the Financial Industry Regulatory Authority ("FINRA") Code of Arbitration for Industry Disputes, to stay the case pending arbitration of the claims alleged by Plaintiff George Franz, III against Allegheny and Allegheny's counterclaim against Franz. Because the Court concludes that all asserted claims fall within the subject arbitration provision, the Court **dismisses with prejudice** the claims and counterclaim so that the parties may proceed to arbitration.

**I.**

Franz seeks damages against Allegheny, his former employer, for Allegheny's alleged failure to promptly notify the relevant insurance carrier and provide defense coverage to Franz

for claims made against him and Allegheny in a FINRA arbitration proceeding captioned *Trinity United Methodist Church v. Allegheny Investments, Ltd.*, FINRA-DR Case No. 07-02960 ("the Litigation"). The amended complaint alleges that Trinity United Methodist Church ("Trinity") notified Allegheny of a claim against Franz and Allegheny in the fall of 2005, at which time such claims against Franz and Allegheny were covered by Westchester Insurance; then-Allegheny President and CEO Susan Schellin discussed the claim with Franz on October 12, 2005; Allegheny personnel advised Franz that they had evaluated Trinity's claim and found he had acted properly; Franz resigned from Allegheny in November 2005; Trinity did not formally institute FINRA arbitration proceedings against Franz and Allegheny until October 2007; attorney James Koehler represented Allegheny in the arbitration and offered to represent Franz as well, but that no defense coverage was extended to Franz. Franz alleges that Allegheny refused to verify the existence or lack of insurance coverage; misrepresented the insurance coverage available to Franz and the correct amount of the deductible; concealed the applicable policies; refused to provide proof of insurance and refused to provide Allegheny's claim file. As a result of Allegheny's misfeasance and despite his timely payment of insurance premiums, Franz was forced to retain his own counsel and an expert witness and incur the cost of defending himself in the arbitration. He alleges that Allegheny entered into settlement discussions with Trinity without Franz's consent. Based on these allegations, Franz seeks to have the Court declare that Allegheny is responsible for the defense and coverage costs he incurred in the arbitration proceedings. He asserts claims for breach of contract, fraudulent misrepresentation and breach of the duty of good faith. Litigation of this case was stayed during the pendency of the arbitration proceedings.

In a December 2009 teleconference, counsel advised the Court that the arbitration panel had issued an award against Franz for the claims made by Trinity, and absolved Allegheny for the claims asserted against it. On January 15, 2010, Allegheny filed the pending Motion to Stay Pending Arbitration of Franz's claims. (ECF No. 10). The Court has reviewed the Motion, the Opposition Brief (ECF No. 13), the Reply Brief (ECF No. 16), the attachments and the entire record and is prepared to enter and explain its ruling.

**II.**

Allegheny contends that Franz is required to arbitrate his claims based on his having signed, in October 2001, a Form U-4 Uniform Application for Securities Industry Registration that provides:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SRO's indicated in Item 11 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

Franz argues that he is not required to arbitrate his claims because (1) he falls within an FINRA exception for certain insurance disputes, (2) disputes that do not arise out of his employment or business activities with Allegheny are not subject to FINRA arbitration, and (3) Allegheny has waived the alleged right to compel arbitration. The Court concludes that the claims do not fall within the asserted insurance exception, they fall within the arbitration provision and Allegheny has not waived its right to compel arbitration.

The Federal Arbitration Act, 9 U.S.C. § 1 reflects a strong policy in favor of arbitration:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable . . .

9 U.S.C. § 2. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). "The court's role is limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 479 (9th Cir. 1991). Any doubts about the scope of arbitrable issues must be resolved in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614 (1985) (citing *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp*., 460 U.S. 1, 22 (1983)).

Allegheny maintains that Franz's claims fall within the arbitration provision and that, under FINRA Code Rule 13200, disputes "must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among" members and associated persons.

Franz does not dispute that Allegheny is a member of FINRA and that he is an associated person by virtue of his former employment with Allegheny. Nor does he challenge the validity of the arbitration provision. Rather, he argues that his dispute falls within the exception of FINRA Rule 13200 which states that "[d]isputes arising out of the insurance business activities of a member that is also an insurance company are not required to be arbitrated under the Code." According to Franz, Allegheny "acted as an insurance company" by accepting his premiums and promising coverage for claims such as the Trinity claim. Furthermore, "in a case closely on point, the Tenth Circuit Court of Appeals found that litigation on the issue of insurance arising out of a broker-dealer's failure to defend a customer claim was not subject to FINRA

arbitration." (ECF No. 13, at 8 (citing *Wilson v. American Investment Services, Inc.*, 33 Fed. Appx. 424 (10th Cir. 2002)). In *Wilson*, the Tenth Circuit addressed the situation of a broker who was the subject of a customer initiated arbitration. Having paid premiums for errors and omissions liability insurance coverage, the broker asked his employer for coverage. When the employer refused and the broker lost at arbitration, the broker filed a federal complaint for bad faith breach of contract. In response, the employer filed a motion to compel arbitration of the claim pursuant to the Form U-4 arbitration clause. The district denied the motion and the ruling was affirmed on appeal.

On the surface, this case would appear to be on point. Upon closer reading, however, *Wilson* is distinguishable from the instant case. In *Wilson*, the employer was in fact the insurer based on notice it had provided to its brokers that it was terminating outside errors and omissions coverage, that it would continue to collect the same amount of money from the brokers for such coverage and that it would use the monies collected to establish its own "litigation reserve account." The courts properly ruled that Wilson's claim fell within the insurance exception because (1) when the employer discontinued its brokers' outside insurance coverage, it voluntarily stepped into the shoes of the previous third party insurer establishing a litigation reserve account and requiring the brokers to pay the same amount they had previously paid to obtain insurance from the third party into the in-house account, (2) the employer actively and voluntarily engaged in the business of selling insurance to Wilson and similarly situated brokers for a fee, rendering itself a *de facto* insurance company, and (3) the employer registered itself with the Illinois Department of Insurance.

A closer reading also shows that *Wilson* supports Allegheny's position that Franz's claims require arbitration. When the employer in *Wilson* denied his request for coverage, Wilson filed a breach of contract cross-claim against the employer <u>in the arbitration proceeding</u> for denying him errors and omissions coverage. At the conclusion of the arbitration proceedings, the panel ruled in favor of Wilson on the breach of contract claim, awarding him $14,000. In addition, Wilson's federal case came about because, during oral argument in the arbitration proceedings, Wilson attempted to introduce evidence establishing that the employer had breached the insurance contract in bad faith. The employer objected to admission of this evidence since Wilson had not pled a claim for bad faith breach or provided any discovery on such a claim. After determining that Wilson had not pled a bad faith claim, the arbitration panel dismissed it without prejudice. That is the claim that Wilson subsequently filed and was litigated in federal court. These facts support Allegheny's position that the claims are arbitrable. The arbitration panel resolved the contract claim in Wilson's favor and it dismissed the bad faith claim <u>not</u> because it was not arbitrable, but because it had not been properly pled.

Because any doubts about the scope of arbitrable issues must be resolved in favor of arbitration, the Court construes the exception to mandatory arbitration conservatively. Because Franz has provided no case law on point supporting his position that his claims against Allegheny fall within the insurance exception, and the primary case he cites actually supports arbitration of his claims, the Court finds that the exception to arbitration for disputes arising out of the insurance business activities of a member that is also an insurance company does not apply here.

Franz also argues that this case does not fall within the FINRA arbitration provision because disputes that do not arise out of the employment itself are not subject to FINRA arbitration, and that they must arise from his business activities. (ECF No. 13, at 7.) In support, Franz cites *Eppinger v. Sealy*, No. 5D08-4286, 2009 WL 4874786 (Fla. App. 5 Dist. Dec. 18, 2009). In *Eppinger*, a former firm employee sued the firm and her husband who was also employed by the firm for violating a provision of her marital separation agreement related to her continued employment at the firm and payment of bonuses. There, the state court properly denied the motion because the claims did not arise out of the business activities of either employee or the firm; rather, they arose out of a divorce agreement.

Here, a client of Franz filed an arbitration proceeding against Franz and Allegheny arising out of Franz's services to that client. Franz asserts that Allegheny failed to timely notify the insurer, Allegheny made fraudulent misrepresentations to Franz about the claim, the deductible, and the coverage, and Allegheny failed to negotiate the claim against Franz in good faith. Allegheny, which won the arbitration, has now filed an indemnification claim against Franz, who lost the arbitration. Neither party is suing the insurance company that purportedly had the obligation to provide errors and omissions coverage. There is but one conclusion that can be made. The claims and counterclaim arise out of the business activities of Franz and Allegheny.

Franz argues that Allegheny has waived the right to have his claims arbitrated because it waited more than a year to file the motion to compel arbitration. In retrospect, given the length of the arbitration proceedings, both parties should have brought these issues before the same arbitration panel that adjudicated Trinity's claim against them.

The Court notes that it is <u>not</u> happy that Allegheny waited so long to file this motion, and that counsel for Allegheny wasted their client's, this Court's and Franz's resources in federal court when this matter could have been resolved at the earlier arbitration.  Accordingly, although the Court does not find that Allegheny waived the right to compel arbitration of Franz's claims , the Court will make one last offer to sit down with the parties and resolve this case to conserve the parties' resources.

Notwithstanding this offer, the Court **dismisses with prejudice** the claims and counterclaim so that the parties may proceed to arbitration.

**IT IS SO ORDERED.**

                                               */s/ Dan A. Polster     February 11, 2010*
                                               **Dan Aaron Polster**
                                               **United States District Judge**